UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL HOLZMEYER, | ) |
| | ) |
| Plaintiff-Counterclaim Defendant, | ) |
| | ) |
| vs. | ) 1:12-cv-01737-SEB-DML |
| | ) |
| WALGREEN INCOME PROTECTION | ) |
| PLAN FOR PHARMACISTS AND | ) |
| REGISTERED NURSES, | ) |
| | ) |
| Defendant-Counterclaimant. | ) |

## ORDER GRANTING SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM

This cause is before the Court on Defendant-Counterclaimant Walgreen Income Protection Plan's ("the Plan") Motion for Summary Judgment [Docket No. 29], filed on October 1, 2013, and Defendant-Counterclaimant's Motion to Amend [Docket No. 36], filed on September 10, 2014. For the reasons set forth below, Defendant-Counterclaimant's motion for summary judgment is GRANTED in relevant part, and the motion to amend is GRANTED.

## Background

In August and October, 2013, respectively, the parties submitted cross motions for summary judgment on Plaintiff's claim for long-term disability benefits pursuant to ERISA.[1] In addition to seeking summary judgment on Plaintiff's principal claim, Defendant's motion also sought summary judgment on its counterclaim for reimbursement of overpayment [Docket No. 22]. The Court's Order of September 4, 2014 [Docket No. 36] granted Plaintiff's motion for

---

[1] See the Court's order of September 4, 2014 [Docket No. 36] for a full discussion of the factual background of the case and Plaintiff's principal claim for relief under ERISA.

1

summary judgment and denied Defendant's motion for summary judgment with respect to this principal claim, but it did not address Defendant's counterclaim.

## Standard of Review

**A. For summary judgment under Rule 56**

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

**B. Under Rule 60(a)**

Federal Rule of Civil Procedure 60(a) authorizes the district court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment." Fed. R. Civ. Pro. 60(a). Motions to amend under Rule 60(a) are not the proper vehicle for relief

where the original judgment is "infected by error," either legal or factual; rather, they serve to allow the remedying of clerical oversights or omissions. *See Klingman v. Levinson,* 877 F.2d 1357, 1360–1361 (7th Cir. 1989).

## Discussion

### I.  Background to the Counterclaim

Plaintiff Michael Holzmeyer is a former employee of Walgreen, Inc. who was enrolled in the company's Income Protection Plan for Pharmacists and Registered Nurses ("the Plan"). The Plan contains a provision explaining that the company retains the right to recover overpayments for "retroactive awards received from sources shown in the Benefit Offset (Reductions) section"—sources that the Plan elsewhere defines to include payments from Social Security. Pl.'s Ex. 2 at 10–11. On December 9, 2010, Holzmeyer signed a "Reimbursement Agreement" in connection with his application for disability benefits from the Plan. In that document, he affirmed that: "I understand that my benefits from the Walgreens Income Protection Plan for my disability are subject to reduction for certain benefits I am eligible for from Social Security, Workers Compensation, and other benefits referred to in this plan's Summary Plan Description." Def.'s Ex. B at 1. He also promised to "immediately reimburse Walgreens for any overpayment created by my receipt of other benefits." *Id.* Further, he recited: "I understand that Walgreens has the right to pursue legal action to collect any overpayment that is not received by them from me promptly upon my receipt of the award from the other source." *Id.*

Holzmeyer had stopped his work as a "home pharmacist" for Walgreens on April 4, 2010, due to back pain that he alleged rendered him disabled. Holzmeyer applied for, and received, short term disability benefits under the Plan for six months—from April 7 to October 3, 2010. R. 176–177; Pl.'s Ex. 2 at 8. Starting on October 4, 2010, Holzmeyer also received long

3

term disability benefits under the Plan, until the Plan terminated his benefits effective September 20, 2011. *See* Docket No. 36 at 10–13. During this same period, Plaintiff also applied for SSDI benefits from the Social Security Administration (SSA). SSA approved Holzmeyer's application, and it awarded him SSDI benefits retroactive to October 2010.[2] R. 298–301.[3] SSA awarded him a total of $24,669.00 in SSDI benefits for the period between October 2010 and September 2011. R. 298.

On November 4, 2011, the Walgreens Disability Department sent Mr. Holzmeyer a letter informing him that his SSDI benefits had resulted in an overpayment of $23,709.33 in long-term disability benefits for the period in which he was receiving both SSDI benefits and benefits under the Plan; the letter sought immediate repayment of this amount. Def.'s Ex. C.[4] After Holzmeyer did not refund the funds in question, the Plan brought a counterclaim in the present action seeking enforcement of its right to repayment.

## II. ERISA entitlement to recovery

Defendant brings this counterclaim under ERISA, which authorizes claims for equitable relief to enforce the terms of a covered benefits plan. *See* 29 U.S.C. § 1132(a)(3). Plaintiff admits that he has been overpaid by $23,709.33, Answer to Counterclaim, at ¶ 8, but asserts that "Defendant has failed to properly plead and prove their [sic] entitlement to this recoupment." Docket No. 31 at 27. Specifically, Plaintiff asserts that since Defendant seeks the enforcement of an equitable lien by agreement, Defendant must show: "(1) the existence of a promise to reimburse the fiduciary for benefits if there is recovery from a third party; (2) [that] the

---

[2] Although SSA found Holzmeyer disabled as of April 2010, SSDI rules provide that a claimant must be disabled for five full calendar months in a row before he becomes entitled to benefits. R. 298.
[3] Citations to the Record (R.) refer to the administrative record compiled by the Plan and attached to Defendant's motion for summary judgment [Docket No. 30].
[4] The discrepancy between the SSDI award of $24,669.00 and Defendant's claimed overpayment amount of $23,709.33 appears to be due to the fact that Plaintiff only received double payment for the first 19 days of September 2011 until the Plan terminated his long-term disability benefits.

reimbursement agreement identifies a specific fund apart from the beneficiary's general assets from which the anticipated reimbursement will be paid; and (3) [that] the funds identified by the Defendant [are] 'within the possession and control' of the plaintiff." *Id.* (citing *Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083, 1092 (9th Cir. 2012); *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 364–365 (2006)). Plaintiff argues that Defendant has not satisfied the second and third prongs of this test, and accordingly is presently not entitled to recovery of the overpayment.

In *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), the United States Supreme Court clarified the scope of *equitable* relief that is available to a plan trustee seeking to enforce a plan's provisions pursuant to 29 U.S.C. § 1132(a)(3). The Court held that a provision of an ERISA plan calling for recovery of funds where the beneficiary had also recovered from a third party was an "equitable lien by agreement," and action to enforce it was "equitable" in nature, even though it shared many of the characteristics of a legal action for breach of contract. 547 U.S. at 362–363. The Court distinguished this holding from several of its previous decisions by noting that, in the case before it, the funds sought by the trustee were "specifically identifiable" and "within the possession and control" of the beneficiaries. *Id.* In the Ninth Circuit decision relied upon by Plaintiff—*Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083 (9th Cir. 2012)—the court read *Sereboff* as establishing a three-part test, requiring not only the existence of a promise to reimburse, but the agreement's identification of a specific fund apart from the beneficiary's general assets which is under the "possession and control" of the beneficiary. 683 F.3d at 1092–1093.

We agree with Defendant that Seventh Circuit case law, rather than the reasoning of the Ninth Circuit in *Bilyeu,* is controlling here.[5] In *Gutta v. Standard Select Trust Insurance Plans,* 530 F.3d 614 (7th Cir. 2008), the Seventh Circuit held that a counterclaim under 29 U.S.C. § 1132(a)(3) for reimbursement of overpayment was cognizable under *Sereboff* as the enforcement of an "equitable lien by agreement." 530 F.3d at 620. There, the beneficiary had agreed under the plan to reimburse the employer for any "amount you receive or are eligible to receive because of your disability under any group insurance coverage"; the court affirmed the district court's grant of summary judgment for the amount of the plaintiff's benefits that was duplicated by his parallel recovery from a separate group insurance plan of which he was a member. *Id.* at 621–622. *See also ACS Recovery Servs., Inc. v. Griffin,* 723 F.3d 518, 528 (5th Cir. 2013) (holding that an equitable lien by agreement arose where a plan beneficiary "had a pre-existing agreement with [counterclaimant] to reimburse the Plan for its payments on his behalf in the event of a third-party recovery").

Defendant's counterclaim here is analogous to that at issue in *Gutta* in all relevant respects. Although he seeks reimbursement for SSDI overpayments rather than proceeds from a separate group insurance policy, the difference is immaterial. *See Makoul v. Prudential Ins. Co. of Am.*, 2013 WL 3874045, at *4 (N.D. Ill. 2013) (rejecting beneficiary's attempt to distinguish

---

[5] We also disagree with Plaintiff's contention that the Supreme Court's recent decision in *CIGNA Corp. v. Amara,* 131 S. Ct. 1866 (2011) reinforces Plaintiff's preferred reading of the distinction between legal and equitable relief or undermines the reasoning of *Gutta.* Plaintiff correctly quotes the Court as underscoring that, "traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were 'particular funds or property in the defendant's possession.'" 131 S. Ct. at 1879. This quotation, however, merely summarizes the principle recognized in *Knudson* and distinguished by *Sereboff* (and *Gutta*). The Supreme Court in *Amara* did not reject or call into question its holding in *Sereboff,* and *Amara* at any rate dealt with a different issue than those presented in *Sereboff, Gutta,* and this case.

*Gutta* on the basis that Social Security benefits are not to be "transferable or assignable" under 42 U.S.C. § 407); *O'Brien-Shure v. U.S. Labs., Inc. Health & Welfare Ben. Plan,* 2013 WL 3321569, at *2 (N.D. Ill. 2013) (applying *Gutta* to SSDI benefits). As we have noted, Plaintiff does not dispute that he agreed to reimburse the Plan for the amounts it overpaid due to his concurrent receipt of any social security benefits; neither does Plaintiff dispute that he has been overpaid by $23,709.33. *See* Answer to Counterclaim, at ¶¶ 1–8. As *Sereboff* explained, the precise "tracing" of funds is not required to satisfy the specificity demanded of equitable suits under 29 U.S.C. § 1132(a)(3); we conclude that the fact that the trustee identifies social security benefits as the source of the overpayment suffices. *See O'Brien,* 2013 WL 3321569, at *2; *see also Gilchrest v. Unum Life Ins. Co. of Am.*, 255 Fed. Appx. 38, 45–46 (6th Cir. 2007) ("[T]he Plan's overpayment provision asserts a right to recover from a specific fund distinct from [the employee's] assets—the fund being the overpayments themselves—and a particular share of that fund to which the plan was entitled—all overpayments due to the receipt of Social Security benefit, but not to exceed the amount of benefits paid."). Defendant has thus identified a particular body of funds paid to Plaintiff—and for which he was obligated, by agreement, to reimburse Defendant as soon as the overpayment occurred. *Cf. Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 207 (2002) (holding that reimbursement sought by a plan was not "equitable," in part, because the funds to which the plan claimed an entitlement were not in the employee's possession, but were in a "special needs trust" created by state law). *See also Sereboff,* 547 U.S. at 362 (distinguishing *Knudson* on these grounds).

Defendant has demonstrated a clear entitlement to recover its overpayment. The facts are not in dispute, and the Seventh Circuit's decision in *Gutta* recognizes the viability of Defendant's Counterclaim to recover overpayment pursuant to a plan's terms under 29 U.S.C. §

1132(a)(3). We possess the power to amend our judgments without notice, *sua sponte* or on the motion of a party, in order to correct an omission. Fed. R. Civ. Pro. 60(a).[6] We now exercise that authority, with respect to our Order and Judgment of September 4, 2014, to resolve Defendant's Counterclaim.

## **Conclusion**

Our resolution of Defendant's Counterclaim does not affect the conclusions we reached in our Order of September 4, 2014, which we reaffirm in its entirety. Because our previous Order omitted discussion of the Counterclaim, we GRANT IN PART Defendant's motion for summary judgment with respect only to the Counterclaim,[7] and we GRANT Defendant's motion to amend our Judgment pursuant to Federal Rule of Civil Procedure 60(a) in order to reflect this result.

We therefore VACATE the Judgment [Docket No. 35] entered by the Court on September 4, 2014, which we will amend with a separate Judgment issued this same day.

IT IS SO ORDERED.

Date: _____9/16/2014_____         _____

                                                                                       SARAH EVANS BARKER, JUDGE
                                                                                       United States District Court
                                                                                       Southern District of Indiana

---

[6] The Counterclaim was fully briefed as part of the parties' briefing on their cross motions for summary judgment. *See* Docket Nos. 30, 31, 32. Because Rule 60(a) authorizes us to correct a clerical oversight *sua sponte* and without notice, we need not wait for Plaintiff to file a response to Defendant's Rule 60(a) motion before we issue this Order.

[7] As stated in our September 4, 2014 Order, Defendant's motion for summary judgment is denied in all other respects.

Distribution:

Bridget L. O'Ryan
O'RYAN LAW FIRM
boryan@oryanlawfirm.com

Eric P. Mathisen
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. - Valpo
eric.mathisen@ogletreedeakins.com

Mark E. Schmidtke
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. - Valpo
mark.schmidtke@ogletreedeakins.com

Kimberly A. Jones
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.-Chicago
kimberly.jones@ogletreedeakins.com